**Court of Appeal No. 23-15445**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

CALVARY CHAPEL SAN JOSE., *et al.*,

*Plaintiffs-Appellants*,

*vs.*

COUNTY OF SANTA CLARA, *et al.*,

*Defendants-Appellees*

_____

*Appeal from the Order of the United States District Court for the Northern District of California,*

*Case No. 5:20-cv-03794
The Honorable Beth Labson Freeman., District Judge*

_____

**APPELLANTS' OPENING BRIEF**

_____

ADVOCATES FOR FAITH & FREEDOM
Robert Tyler, CA Bar No. 179572
btyler@faith-freedom.com
Mariah Gondeiro, CA Bar No. 323683
mgondeiro@faith-freedom.com
Julianne Fleischer, CA Bar No. 337006
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Tel: (951) 600-2733

*Counsel for Appellants Calvary Chapel
San Jose and Pastor Mike McClure*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant, Calvary Chapel San Jose, certifies that it is not publicly held and has no corporate parents, subsidiaries, or affiliates that are publicly held which own 10% or more of its stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................2

TABLE OF CONTENTS...........................................................................3

TABLE OF AUTHORITIES ....................................................................5

I. INTRODUCTION ................................................................................9

II. JURISDICTIONAL STATEMENT..................................................12

III. ISSUES PRESENTED.......................................................................12

IV. STATEMENT OF THE CASE ...........................................................13

    A. FEDERAL ACTION ......................................................................13

    B. STATE COURT PROCEEDING ....................................................18

V. SUMMARY OF THE ARGUMENT ...................................................19

VI. STANDARD OF REVIEW ................................................................20

VII. ARGUMENT .....................................................................................20

    A. THE FEDERAL DISTRICT COURT ERRED IN EXERCISING ABSTENTION. ...................................................................................20

        1. As A Preliminary Matter, This Court Can Address The District Court's Error In Analyzing The *Younger* Abstention Issue Despite The Parallel State Court's Recent Decision On The Merits. ...........21

        2. The County Waived *Younger* Abstention. ........................................23

            (a) The County waived *Younger* through untimely filing of its *Younger* motion to dismiss. ....................................................23

            (b) The County's delay in bringing *Younger* is contrary to the policies behind the *Younger* abstention doctrine. .................25

        3. This Case Does Not Satisfy The Threshold Factors To Warrant Abstention. ........................................................................................26

4.      Even If The Court Finds That The *Younger* Factors Are Satisfied, This Case Implicates A *Younger* Exception. ....................................36

B.      THE FEDERAL DISTRICT COURT ERRED IN DISMISSING APPELLANTS' FIRST AMENDMENT RETALIATION CLAIM BECAUSE COUNTY COUNSEL JAMES WILLIAMS IS NOT PROTECTED BY THE *NOERR-PENNINGTON* DOCTRINE.......38

1.      As A Preliminary Matter, This Court Has Jurisdiction Over The Appeal Regarding Appellants' First Amendment Retaliation Claim Because The Lower Court Issued A Final Order In The Instant Action. ...............................................................................................38

2.      The *Noerr-Pennington* Doctrine Is Only Applicable In Instances When The Petitioning Party Is Petitioning A Government Body.....39

3.      The District Court Improperly Dismissed The Case Without Leave To Amend.....................................................................................42

VIII. CONCLUSION .................................................................................43

CERTIFICATE OF COMPLIANCE .........................................................44

# TABLE OF AUTHORITIES

Page(s)

Cases

*AmerisourceBergen Corp. v. Roden*,
495 F.3d 1143 (9th Cir. 2007) ................................................................ passim

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016) ........................................................... 11, 40

*Bean v. Matteucci*,
986 F.3d 1128 (9th Cir. 2021) ...............................................................20

*Beltran v. State of Cal.*,
617 F. Supp. 948 (S.D. Cal. 1985)........................................................21

*Beltran v. State of Cal.*,
871 F.2d 777 (9th Cir. 1988) ................................................................21

*Champion International Corp. v. Brown*,
731 F.2d 1406 (9th Cir. 1984) ..............................................................32

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)........................................................... 11, 26, 35

*Columbia Basin Apartment Association v. City of Pasco*,
268 F.3d 791 (9th Cir. 2001) ............................................................ 23, 24

*Cook v. Harding*,
879 F.3d 1035 (9th Cir. 2018) ..............................................................26

*Costello v. Wainwright*,
525 F.2d 1239 (5th Cir. 1976) ...............................................................30

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ...............................................................38

*Dombrowski v. Pfister*,
380 U.S. 479 (1965)..............................................................................32

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975)....................................................................... 28, 37

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) ...............................................................42

*Elrod v. Burns*,
427 U.S. 347 (1976)..............................................................................34

*England v. Louisiana State Bd. of Med. Examiners*,
375 U.S. 411 (1964)..............................................................................37

*Equity Lifestyle Props., Inc. v. County of San Luis Obispo*,
548 F.3d 1184 (9th Cir. 2008) ...............................................28
*Forty One News, Inc. v. Cty. Of Lake*,
491 F.3d 662 (7th Cir. 2007) ...............................................30
*Fresh Int'l Corp. v. Agric. Labor Relations Bd.* ,
805 F.2d 1353 (9th Cir. 1986) ...............................................29
*Gateway City Church v. Newsom*,
141 S. Ct. 1460 (2021)............................................ 9, 30, 34
*Gilbertson v. Albright*,
381 F.3d 965 (9th Cir. 2004) .............................. 27, 31, 35
*Goldie's Bookstore, Inc. v. Superior Court*,
739 F.2d 466 (9th Cir. 1984) ...............................................32
*Herrera v. City of Palmdale*,
918 F.3d 1037 (9th Cir. 2019) ................................... passim
*Hicks v. Miranda*,
422 U.S. 332 (1975)........................................... 28, 37
*Hill v. Blind Industries and Services of Maryland*,
179 F.3d 754 (9th Cir. 1999) ...............................................25
*Hoye v. City of Oakland*,
653 F.3d 835 (9th Cir. 2011) .............................. 21, 29, 31
*Janjua v. Neufeld*,
933 F.3d 1061 (9th Cir. 2019) ...............................................22
*Kearney v. Foley & Lardner, LLP*,
590 F.3d 638 (9th Cir. 2009) ...............................................41
*Kendall-Jackson Winery, Ltd. v. Branson*,
212 F.3d 995 (7th Cir. 2000) ...............................................24
*Kline v. Burke Const. Co.*,
260 U.S. 226 (1922)...............................................36
*Litchfield v. Spielberg*,
736 F.2d 1352 (9th Cir. 1984) ...............................................39
*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ...............................................34
*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988) ...............................................42
*Miofsky v. Superior Court of the State of Cal.*,
703 F.2d 332 (9th Cir. 1983) .............................. 31, 34
*Montclair Parkowners Ass'n v. City of Montclair*,
264 F.3d 829 (9th Cir. 2001) ...............................................35

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ..................................................................27
*Nationwide Biweekly Admin., Inc. v. Owen*,
  873 F.3d 716 (9th Cir. 2017) ....................................... 26, 30
*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989) ..............................................................27
*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*,
  477 U.S. 619 (1986) ....................................... 25, 36, 37
*People v. Calvary Chapel San Jose*,
  298 Cal. Rptr. 3d 262 (Ct. App. 2022) ...............................18
*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*,
  946 F.3d 1100 (9th Cir. 2020) ...........................................20
*Playtime Theaters, Inv. v. City of Renton*,
  748 F.2d 527 (9th Cir. 1984) ....................................... 32, 33
*Polykoff, IAS, Inc. v. Collins*,
  816 F.2d 1326 (9th Cir. 1987) ............................................32
*Potrero Hills Landfill, Inc. v. County of Solano*,
  657 F.3d 876 (9th Cir. 2011) ....................................... 31, 32
*Rodriquez v. City of San Jose*,
  930 F.3d 1123 (9th Cir. 2019) ............................................23
*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) .................................................................9
*Romoland Sch. Dist. v. Inland Empire Energy Ctr.*,
  548 F.3d 738 (9th Cir. 2008) ...............................................39
*Seneca Ins. Co., Inc. v. Strange Land, Inc.*,
  862 F.3d 835 (9th Cir. 2017) ...............................................26
*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ....................... 10, 20, 40, 41
*South Bay Pentecostal Church, v. Newsom*,
  141 S. Ct. 716 (2021) ................................................ 9, 30, 33
*Spivey v. Barry*,
  665 F.2d 1222 (D.C. Cir. 1981) ...........................................24
*Sprint Communic'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013) ...................................................... 23, 26
*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ...........................................................34
*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004) .............................................42

*Thompson v. Paul*,
    547 F.3d 1055 (9th Cir. 2008) ...........................................................20

*United States v. Morros*,
    268 F.3d 695 (9th Cir. 2001) .............................................................29

*Younger v. Harris*,
    401 U.S. 37 (1971).............................................................. 12, 20, 36

*Zwickler v. Koota*,
    389 U.S. 241 (1967).........................................................................37

Statutes

28 U.S.C. § 1291 ....................................................................... 12, 38

28 U.S.C. § 1331 ..............................................................................12

28 U.S.C. § 1343 ..............................................................................12

42 U.S.C. § 1983..............................................................................12

# I. INTRODUCTION

In March 2020, Appellee Santa Clara County ("the County") issued the country's first shelter-in-place order to combat COVID-19, causing other counties to follow suit. 4 ER 781. The County's public health orders consistently treated churches harsher than secular entities and activities. 5 ER 990-94; 6 ER 1088, 1134-37, 1140-41. Appellants Calvary Chapel San Jose and Pastor Mike McClure filed a lawsuit in June 2020, seeking to enjoin and hold unconstitutional the County's public health orders. 14 ER 3348-3439. The County subsequently adopted a fine system and singled out Appellants for punishment, doling out millions in fines against Appellants for their refusal to comply with health orders they believed were in violation of the Free Exercise Clause. 5 ER 991; 8 ER 1706; 10 ER 2165-78. Four months later, in October 2020, the County filed a state enforcement action in Santa Clara County Superior Court to enjoin Appellants from holding church services in violation of the COVID-19 orders. 16 ER 3607-27.

Appellants refused to forgo their First Amendment rights. A month later, the Supreme Court issued an opinion in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), enjoining New York's COVID-19 capacity restrictions as applied to churches. The Supreme Court has since vindicated Appellants' position five times. *See, e.g., South Bay Pentecostal Church, v. Newsom*, 141 S. Ct. 716 (2021) ("South Bay"). Indeed, the Supreme Court specifically admonished Santa Clara County for its unconstitutional restrictions on gatherings. *Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021) ("Gateway").

Despite this vindication, the Appellees took drastic measures to gain leverage over the Appellants. In December 2020 through January 2021, while Appellant Pastor Mike McClure was defending himself in parallel state court contempt proceedings, Appellee County Counsel James Williams sent threatening letters to Calvary Chapel San Jose's lender, Cass Bank, causing the bank to temporarily sever ties with Appellants and forcing the church to make several accelerated payments to avoid a default on its mortgage. 10 ER 2413-32; 10 ER 2236. James Williams sent the letters to punish Appellants for seeking to vindicate their First Amendment rights. 12 ER 2723-24.

On March 18, 2022, the district court dismissed Appellants' First Amendment retaliation claim, without leave to amend, based on the *Noerr-Pennington* doctrine. 1 ER 2-29. This doctrine, which derives from the First Amendment, provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The County, at the direction of County Counsel James Williams, sent threatening letters to Cass Bank to punish Appellants for defying the COVID-19 orders and to pressure them into dropping their legal actions. 10 ER 2413-32; 12 ER 2723-24. The County was not petitioning the government for redress when they sent the threatening letters to Cass Bank. 11 ER 2641-42. The County sent the letters on behalf of the government. 11 ER 2641-42. There is simply no basis to apply the *Noerr-Pennington* doctrine to shield government officials from liability for actions they take in their official capacity,

under color of law, to pressure private citizens into dropping their legal actions. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

The parties continued to litigate Appellants' remaining constitutional challenges to the COVID-19 orders and related fines in federal court. Indeed, by fall of 2023, both parties had completed factual discovery in the federal forum, and Appellants had filed a summary judgment motion. 5 ER 980-1011. But in an attempt to start the ninth inning with a different umpire and with a different set of rules to avoid an adverse result, the Appellees brought a belated motion to abstain under *Younger* in favor of a later filed state superior court lawsuit filed by the County against Appellants. The district court improperly abstained from reaching the merits of Appellants' constitutional claims and therefore refused to exercise the "virtually unflagging" jurisdiction given to it. 1 ER 29-52; *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

The district court's decision unfairly prejudices Appellants because it was more intimately familiar with the constitutional issues than the state court. 10 ER 2219-20. The state court decision does not address the numerous constitutional challenges raised in Appellants' federal action, such as the singing ban, social distancing requirement, capacity restrictions, and shelter-in-place order. 16 ER 3535-67. Further, the facts of this case do not satisfy the threshold factors necessary to warrant *Younger* abstention. The parallel state case was not ongoing when Appellants filed this action, and the state proceeding does not implicate an important

state interest. Appellants cannot litigate their damages claim in state court, and the federal action does not enjoin the state court proceeding.

For these reasons, this Court should reverse the district court's decisions and remand for further proceedings.

## II. JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Appellants' claims arise under the United States Constitution, and pursuant to 28 U.S.C. § 1343 because relief is sought under 42 U.S.C. § 1983. On March 22, 2023, Appellants filed a timely Notice of Appeal of the district court's March 10, 2023 order granting Appellees' motion for abstention (1 ER 30-52) and March 18, 2022 order granting Appellees' motion to dismiss Appellants' First Amendment retaliation claim, identified as the Seventh Cause of Action in the Third Amended Complaint (1 ER 2-29). 15 ER 3490-91. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. ISSUES PRESENTED

1.     Whether the district court erred in exercising abstention under *Younger v. Harris*, 401 U.S. 37 (1971)?

2.     Whether the district court erred in dismissing Appellants' First Amendment Retaliation claim?

## IV. STATEMENT OF THE CASE

### A.   Federal Action

Appellants Calvary Chapel San Jose and Pastor Mike McClure brought this action on June 9, 2020 against Appellee Santa Clara County, challenging the County's and State of California's COVID-19 public health orders. 14 ER 3348-489; 15 ER 3426-89.

At the onset of the COVID-19 pandemic, on or around February 2020, the County activated the Emergency Operations Center to coordinate the countywide response to COVID-19. 5 ER 989-90; 6 ER 1062-65. The County issued the Nation's first shelter-in-place order on March 16, 2020, which included an exemption for essential industries. 5 ER 990; 3 ER 775-81. In-person religious services, however, were not considered essential. 5 ER 990; 6 ER 1048, 1088, 1134-37, 1140-41.

In August 2020, the Santa Clara County Board of Supervisors adopted a COVID-19 urgency ordinance, so the County could enforce the COVID-19 orders by issuing fines against entities that violated the orders. 5 ER 960-73; 6 ER 960-73. The County levied over $4 million against Appellants for alleged COVID-19 health violations. 5 ER 991; 8 ER 1706.

From November 9, 2020 to June 21, 2021, the County fined Appellants daily for failing to enforce face coverings. 5 ER 991; 9 ER 2046-51, 2073-74, 2100-01. The fines for failing to enforce face covering totaled $2,234,000. 5 ER 991; 9 ER 2046-51. The County also cited Appellants every day for failing to submit a completed social distancing protocol, which totaled $1,327,750. 5 ER 991; 9 ER

2046-51. The protocol required Appellants to agree to enforce face coverings and "any applicable capacity restrictions" and follow "any applicable industry-specific directives issued by the County Health Officer and COVID-19 Industry Specific Guidance issued by the California Department of Public Health." 5 ER 991; 9 ER 2055-56. Beginning on August 23, 2020, the County also started to fine Appellants for holding unlawful Sunday gatherings, which combined violations for not enforcing social distancing and mask requirements, permitting performers and congregants to sing, and not following applicable capacity restrictions. 5 ER 991; 9 ER 1890.

Appellants have amended their lawsuit multiple times as the facts of the case developed, and the parties aggressively litigated the federal proceedings. Appellants have amended their lawsuit multiple times as the facts of the case developed, and the parties aggressively litigated the federal proceeding. Appellants amended their complaint in November 2020 (14 ER 3165-3312), March 2021 (12 ER 2918-51), September 30, 2021 (11 ER 2617-2819), and then April 15, 2022 (10 ER 2181-2379).

On September 30, 2021, Appellants filed a third amended complaint to include a cause of action against County Counsel James Williams for First Amendment retaliation. 11 ER 2617-89. The County, at the direction of Mr. Williams, took extreme measures to collect the fines and to deter Appellants from pursuing further litigation. 11 ER 2632-33. In December 2020, Assistant County Counsel Tony Lopresti, as ratified by Mr. Williams, sent a letter to Calvary Chapel

San Jose's lender, Cass Commercial Bank ("Cass Bank"), telling it that the Appellants had been held in contempt and fined over $1 million for violating COVID-19 orders. 10 ER 2360-69; 11 ER 2632. On January 4, 2021, Mr. Lopresti, as ratified by Mr. Williams, sent another, similar letter to Cass Bank. 10 ER 2371-79; 11 ER 2632.  Mr. Williams was aware that their letters would put pressure on Cass Bank to drop the church and, in turn, force the church to pay the fines, comply with the COVID-19 orders, and drop their legal challenges to not have their church building foreclosed upon. 11 ER 2633.

Cass Bank interpreted the letters as a threat that the County intended to take the church property to satisfy the fines. 12 ER 2715. On January 21, 2021, Cass Bank sent a Notice of Default to Appellants for noncompliance with governmental regulations and nonpayment of fines. 11 ER 2633. Cass Bank only withdrew the default notice after it learned that Appellants were contesting the fines (information Mr. Williams had intentionally omitted from the County's letters). 12 ER 2715.

On November 12, 2021, the County filed a motion to dismiss Appellants' third amended complaint (11 ER 2576-96), and on March 18, 2022, the district court granted the County's motion to dismiss without leave to amend and denied in part the County's motion to dismiss (1 ER  2-29). The district court's order granted Appellants leave to amend certain constitutional claims but dismissed Appellants' First Amendment retaliation cause of action against Mr. Williams with prejudice. 1 ER 27-28.

On April 15, 2022, Appellants filed their fourth amended complaint, which challenges the constitutionality of numerous orders including the singing ban, capacity restrictions, shelter-in-place order, face covering guidance, and social distancing requirement. 10 ER 2185-95, 2198-2203. On June 9, 2022, the County filed a motion to strike and to dismiss the Fourth Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). 10 ER 2145-72. On October 6, 2022, the district court granted the County's motion to dismiss without leave to amend and denied in part the County's motion to dismiss. 3 ER 240-53.

On May 4, 2022, the County filed a motion to stay proceedings pending the outcome of the later filed state proceeding before the Santa Clara County Superior Court. 10 ER 2173. On May 26, 2022, the district court denied the County's motion to stay noting, in relevant part:

> [T]he constitutional issues are more prominently presented in this case than in the state court case, in which [Appellants] present their constitutional defense in a single affirmative defense. The Court has also adjudicated multiple motions in this case and so is familiar with the constitutional issues presented in this case. Thus, while there are no doubt parallels between this action and the state court action and overlapping issues, the Court finds that the outcome of the state court action will not "control the instant action."

10 ER 2179.

Despite the County's numerous motions to dismiss and to stay proceedings filed throughout the course of this federal action, the County did not once raise any *Younger* abstention concerns. The parties continued to aggressively litigate the

16

federal proceeding, and on September 16, 2022, Appellants filed a motion for summary judgment, arguing that the singing ban, capacity restrictions, face covering guidance, social distancing requirement, and shelter-in-place order were unconstitutional and the Appellants were therefore entitled to nominal damages. 5 ER 997-1010. It was not until just five days after the district court's order denying in part the County's most recent motion to dismiss, that the County filed yet another motion to dismiss and to stay Appellants' claims on October 11, 2022 on *Younger* grounds. 11 ER 2434-61; 10 ER 2145-72; 2 ER 226-36. The County had ample time to raise any *Younger* abstention concerns throughout this multi-year proceeding, but instead the County waited until after the parties completed factual discovery and less than a month after Appellants filed their motion for summary judgment to bring a belated motion to dismiss under *Younger*.

The district court heard oral argument on the County's abstention motion and both parties' motions for summary judgment on January 26, 2023. 2 ER 54-134. On March 10, 2023, the district court granted the County's motion to dismiss and dismissed without prejudice Appellants' claims to the extent they sought injunctive and declaratory relief and stayed proceedings pending resolution of the parallel state court proceeding to the extent the claims sought monetary relief. 1 ER 52.

Appellants bring this appeal challenging the district court's order dismissing their First Amendment retaliation claim against Mr. Williams (1 ER 2-29) and the district court's order dismissing Appellants claims under *Younger*. 1 ER 29-52.

**B.    State Court Proceeding**

Four months after Appellants filed this action in federal court, the State of California and the County filed a state civil enforcement action in Santa Clara County Superior Court on October 27, 2020 against Appellants for their refusal to comply with the public health orders. 16 ER 3607-28. In November 2020, the state superior court issued a temporary restraining order and preliminary injunction that enjoined Appellants from holding indoor gatherings, required congregants to wear face coverings and socially distance, and required Appellants to submit a social distancing protocol to the County. *People v. Calvary Chapel San Jose*, 298 Cal. Rptr. 3d 262, 265 (Ct. App. 2022). After Appellants refused to comply with the temporary restraining order and the preliminary injunction, the State of California and County sought to hold Appellants in contempt. *Id.* On December 17, 2020, the state superior court held Appellants in contempt and issued monetary sanctions and fines against them. *Id.* On February 16, 2021, the state superior court, again, held Appellants in contempt. *Id.* Appellants appealed the state superior court's contempt orders and monetary sanctions and fines, and on August 15, 2022, the Sixth Appellate District of California annulled the contempt orders and reversed the monetary sanctions and fines. *Id.* at 284.

On July 29, 2021, the County amended its complaint to seek enforcement of $2.87 million in fines levied against Appellants. 16 ER 3568-3606. The complaint also alleges Appellants' gatherings constitute a public nuisance. 16 ER 3600-01.

In April 7, 2023, the state court granted the County's motion for summary adjudication and ordered Appellants to pay $1,228,700 in fines for violating the face-mask orders. 16 ER 3561-3592. The County did not seek relief related to their public nuisance cause of action, and the state court only addressed the face covering guidance. 16 ER 3571, 3579-86. On May 15, 2023, Appellants filed an appeal to the Sixth Appellate District of California, wherein the opening brief is not yet due. 16 ER 3628.

## V. SUMMARY OF THE ARGUMENT

The district court's decisions to abstain from reaching the merits of Appellants' constitutional claims and dismissal of the First Amendment retaliation claim are premised on fundamental errors of law.

*First*, with respect to the district court's decision to abstain under *Younger*, the lower court applied an incorrect analysis in addressing the *Younger* factors. 1 ER 29-52. To begin, the *Younger* abstention jurisprudence indicates that courts consider whether all the *Younger* elements are satisfied concurrently, not at different stages of the proceedings. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007) ("Roden"). The lower court piecemealed the *Younger* factors to reach a conclusion that it was proper for it to abstain. Next, the district court failed to consider the entire scope of the parallel state and federal proceedings in determining whether each *Younger* factor was satisfied. The federal action was more advanced, and the state court action does not implicate important state interests.

*Second*, the district court improperly dismissed Appellants' First Amendment retaliation claim on the basis that the claim is barred by the *Noerr-Pennington* doctrine. 1 ER 2-29. This is improper because the *Noerr-Pennington* doctrine is not applicable in this case. The *Noerr-Pennington* doctrine is only applicable in instances when the petitioning party is petitioning a government body for redress. *Sosa*, 437 F.3d at 929. There are no facts that support the position that the County was petitioning any government body for redress—instead, the County sought to influence litigation by sending threating letters to Appellants' bank. The Court's analysis was deeply flawed, and its conclusion was erroneous as a matter of law.

For these reasons, the district court's decisions are erroneous and should be reversed.

## VI. STANDARD OF REVIEW

A district court's decision to abstain under *Younger* is reviewed de novo. *Bean v. Matteucci*, 986 F.3d 1128, 1132 (9th Cir. 2021). A dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed de novo. *Thompson v. Paul*, 547 F.3d 1055, 1058 (9th Cir. 2008). As a general rule, "an appellate court does not decide issues that the trial court did not decide." *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020).

## VII. ARGUMENT

## A.  THE FEDERAL DISTRICT COURT ERRED IN EXERCISING ABSTENTION.

The district court's decision to abstain under *Younger v. Harris*, 401 U.S. 37 (1971) is based on an erroneous application of the *Younger* abstention doctrine.

*First*, the district court should not have considered abstention because the County waived its right to raise *Younger* abstention. *Second*, even if this Court finds that the County did not waive *Younger* abstention, the Appellants should still prevail because the *Younger* factors were not satisfied concurrently.

1. **As A Preliminary Matter, This Court Can Address The District Court's Error In Analyzing The *Younger* Abstention Issue Despite The Parallel State Court's Recent Decision On The Merits.**

Though the state court in the parallel proceeding issued a decision granting the County's motion for summary adjudication (16 ER 3535-67), this Court can still address the merits of the *Younger* abstention issue. The state court's decision does not preclude this Court from making a determination as to whether the district court erroneously applied *Younger* abstention. In *Hoye v. City of Oakland*, this Court noted that it would still address *Younger* abstention concerns even though the parallel "state court proceedings [] ended." 653 F.3d 835, 843 n.5 (9th Cir. 2011). The conclusion of the state court proceedings was not a "sufficient reason" to refuse to address the merits of *Younger*. *Id.* This Court also disagreed with a lower federal court for incorrectly concluding that "the termination of all pending litigation between the parties in other forums renders moot the arguments presented by the parties urging this court to abstain from decision," stating, "[t]his reasoning is incorrect." *Beltran v. State of Cal.*, 871 F.2d 777, 782 (9th Cir. 1988) (quoting *Beltran v. State of Cal.*, 617 F. Supp. 948, 956 (S.D. Cal. 1985), rev'd, 857 F.2d 542 (9th Cir. 1988), opinion amended and superseded on denial of reh'g, 871 F.2d 777 (9th Cir. 1988).

In this case, the district court even recognized that the outcome of the state court proceeding would do little to impact the outcome in the instant federal action. 10 ER 2179. In its order denying a previous motion to stay, the district court stated that "the constitutional issues are more prominently presented in this case than in the state court case . . . [and] while there are no doubt parallels between this action and the state court action and overlapping issues, *the Court finds that the outcome of the state court action will not 'control the instant action.'*" 10 ER 2179 (emphasis added).

In the federal action, Appellants raised constitutional claims related to numerous health orders that are not addressed in the state action such as the singing ban, capacity restrictions, social distancing requirement, and the shelter-in-place order. 10 ER 2184-95, 2198-2202. Thus, regardless of how the Sixth Appellate District of California rules regarding the constitutionality of the face covering guidance, if this matter is remanded to the district court, the district court will still have to address the constitutionality of the remaining public health orders.

Although it would be outside of this Court's purview to address whether the district court is precluded from addressing the constitutionality of the face covering guidance, Appellants contend issue preclusion would not apply. Issue preclusion applies only when a party has a full and fair opportunity to litigate the merits of an issue. *Janjua v. Neufeld*, 933 F.3d 1061, 1067 (9th Cir. 2019) (cleaned up). Appellants have not had such an opportunity in either state or federal court. Courts also consider whether issue preclusion would promote the public policies of

22

"preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexation litigation." *Rodriquez v. City of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019).

The judicial economy would not be served by bifurcating the issue related to the face covering guidance. Deciding the constitutionality of all public health orders together in one judicial forum would prevent inconsistent judgments and therefore preserve the integrity of the judicial system. The Appellants also did not have a fair opportunity to seek damages in state court. They filed a lawsuit in federal court first. The County did not object to the Appellants seeking damages in federal court until nearly two and a half years later when it brought its *Younger* motion to dismiss. It would be unjust to allow the state court to have the final say regarding the constitutionality of the face covering guidance when the County had countless opportunities over the multi-year litigation to object to the federal forum. The County willingly chose to litigate in federal court for years. As such, the district court should exercise its "virtually unflagging" duty and address all constitutional claims before it. *Sprint Communic'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).

## 2. The County Waived *Younger* Abstention.

### (a) The County waived *Younger* through untimely filing of its *Younger* motion to dismiss.

The district court improperly suggested the County can only expressly waive its right to raise abstention. 1 ER 48-49. In doing so, it relied on *Columbia Basin Apartment Association v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001), a distinguishable case. There, the city's state court suit was pending at the time the

federal suit was filed. *Id.* at 801. This Court found that the city did not expressly urge the federal court to adjudicate the merits of the constitutional claims because it initially filed its claims in state court. *Id.* at 800. Therefore, the Court found abstention applied. *Id.* Here, Appellants do not claim the County waived its right to raise abstention through express waiver. Rather, Appellants claim the County waived abstention because of its unjustifiable delay.

Courts have found a waiver based upon the defendant's conduct, such as their failure to timely raise *Younger*. *See, e.g.*, *Walnut Properties, Inc. v. City of Whittier*, 861, F.2d 1102, 1106 (9th Cir. 1988) ("Walnut"); *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995, 997 (7th Cir. 2000); *Spivey v. Barry*, 665 F.2d 1222, 1229 (D.C. Cir. 1981). In *Walnut*, this Court noted that it was "far too late [for the city] to challenge the district court's decision to proceed initially with the case" when the city failed to timely raise the abstention on the first two appeals. 861 F.2d at 1106; *but cf Herrera v. City of Palmdale*, 918 F.3d 1037, 1042 (9th Cir. 2019) (granting abstention on the first motion to dismiss).

The County filed its state enforcement action on October 2020 (16 ER 3607-28) and amended its complaint to seek enforcement of $2.87 million in fines levied against Appellants in July 2021 (16 ER 3604-05). The County did not raise *Younger* abstention at this point. The County continued to litigate this case in federal court and filed numerous motions to dismiss. 2 ER 226-36; 10 ER 2145-72; 10 ER 2173; 11 ER 2576-96; 13 ER 2956-87; 14 ER 3317-47. The County did not raise *Younger* abstention in any of these motions. It was only after discovery was completed in the

federal action and the district court set a hearing on Appellants' motion for summary judgment that the County raised *Younger* to avoid an adverse judgment. The County had ample opportunity to raise abstention and its inexcusable delay should preclude a finding in favor of abstention.

> **(b)** **The County's delay in bringing *Younger* is contrary to the policies behind the *Younger* abstention doctrine.**

When determining whether to abstain, courts consider fairness considerations and whether abstention would serve the "purposes that animate the abstention principle." *Walnut*, 861 F.2d at 1107. Fairness required this case to continue before the district court because allowing the County to avoid an adverse judgment after litigating the case for over two and a half years works "a virtual fraud on the federal court and [the Appellants]." *Hill v. Blind Industries and Services of Maryland*, 179 F.3d 754, 758 (9th Cir. 1999).

The fact that *Hill* involved eleventh immunity is immaterial. *Younger* abstention is not a jurisdictional issue; it is a jurisprudential issue. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626 (1986) ("Dayton"). Thus, *Younger* abstention may be waived. *Id.*

Here, both the district court and the parties expended significant time and resources in adjudicating and litigating the federal action. The parties had completed extensive discovery, briefed, and argued numerous substantive motions, addressed several discovery disputes before the federal magistrate court, and exhausted factual discovery. The federal court was intimately familiar with the constitutional claims, which is why it denied the County's earlier motion to stay. 10 ER 2179-80. Indeed,

25

in a previous order, the district court noted that it was "baffling to the [court] as to why [the County] did not raise the *Younger* abstention issue it raises in its latest motion to dismiss in its prior motion." 2 ER 237.

Appellants' federal action also raises constitutional issues that are not raised in the state court case such as the constitutionality of the singing ban, capacity restrictions, and the shelter-in-place order. 10 ER 2184-95, 2198-2202. The only issue at play in the state court appeal is the constitutionality of the face covering guidance. 16 ER 3535-67. It could be years before Appellants are able to litigate the constitutionality of all challenged public health orders in federal court. In the interest of fairness and judicial economy, this Court should remand this case back to the district court.

### 3. This Case Does Not Satisfy The Threshold Factors To Warrant Abstention.

The doctrine of abstention, under which a district court may decline to exercise or postpone the exercise of its jurisdiction, is an "extraordinary and narrow exception" to the duty of a district court to adjudicate a controversy properly before it. *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018) (quoting *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017)). "[A] federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Jacobs*, 571 U.S. at 77 (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 817. There exists a "strong presumption against abstention," making abstention only permissible in extraordinary or "exceptional circumstances" of a few carefully defined situations with set requirements. *Seneca Ins. Co., Inc. v. Strange Land, Inc.*,

862 F.3d 835, 842 (9th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)); *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004) (establishing situations in which *Younger* abstention is appropriate). Abstention is not appropriate simply because a pending state court proceeding involves the same subject matter. *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989).

*Younger* abstention only applies if the four *Middlesex* factors are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) "the federal court action would enjoin the proceeding or have the practical effect of doing so, [as to] interfere with the state proceeding in a way that *Younger* disapproves." *Gilbertson*, 381 F.3d at 978. Abstention is only proper "if all four *Younger* requirements [are] strictly satisfied." *Roden*, 495 F.3d at 1149.

In reviewing the string of *Younger* abstention cases, it is apparent that the courts consider whether each of the *Younger* elements are satisfied at a *concurrent* time. In addressing *Younger* abstention, the lower federal court improperly piecemealed the *Younger* elements, finding that at different times throughout the state and federal proceedings, varying *Younger* elements were satisfied. No court has ever done this, and to do so now undermines the policy principles behind the *Younger* abstention doctrine. This case does not satisfy the *Younger* requirements.

(i)     Ongoing

27

The district court erroneously applied the first factor within the *Younger* abstention framework. 1 ER 37-39. In assessing whether *Younger* abstention applies, courts first ask whether there is an ongoing state proceeding. *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1196 (9th Cir. 2008). Under this Court's precedent, a state proceeding is considered "ongoing" for *Younger* purposes in two circumstances. First, a state proceeding is "ongoing" if it was pending at the time the federal suit was filed. *Id.* Second, even if a state proceeding began after the filing of a federal suit, the state proceeding is still "ongoing" if "the state [proceeding] commenced before any proceedings of substance on the merits have taken place in the federal court," *Hicks v. Miranda*, 422 U.S. 332, 349 (1975), or if "the federal litigation [is] in an embryonic stage and no contested matter [has] been decided." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975).

What constitutes a "proceeding of substance on the merits" or the "embryonic stage" remains a murky question still being fleshed out by the district courts. Often when courts find a state action ongoing, the state lawsuit was either filed first or filed in virtual unison with the federal action. *See, e.g.*, *Hicks*, 422 U.S. at 349 (state proceedings commenced one day after service of the federal complaint); *Doran*, 422 U.S. at 925 (state prosecution commenced one day after the filing of the federal complaint); *Herrera*, 918 F.3d at 1043-50 (Defendants filed their state claim "almost simultaneously" after Plaintiffs filed their federal claim). In *Fresh Int'l Corp. v. Agric. Labor Relations Bd.*, the Ninth Circuit held that even though months had passed, the case was still in its embryonic stage because "[n]o discovery took place,

no hearings were held, and no motions were filed." 805 F.2d 1353, 1358 n.5 (9th Cir. 1986). Conversely, in *Hoye*, this Court held that proceedings of substance on the merits had occurred considering six months had transpired, and the district court denied Hoye's motion for TRO, held four status conferences and hearings in the case, and expressed skepticism regarding the constitutionality of the city's statute. 653 F.3d at 844.

Here, the lower federal court erroneously focused its analysis of the "ongoing" element based upon the date in which the County initially filed suit in state court— October 2020. 1 ER 37-39. At this time, the County only sought to enjoin Appellants' church gathering. The County did not seek to collect fines from the Appellants until July 2021 – over a year after Appellants filed their lawsuit in federal court. The County's amended complaint in July 2021 created a conflict between the state and federal courts because Appellants sought to enjoin enforcement of the fines in the federal action and the County sought to collect the fines through its state enforcement action. Thus, the appropriate date for this Court to consider is July 2021, not October 2020. *See, e.g.*, *United States v. Morros*, 268 F.3d 695, 707 (9th Cir. 2001) ("[T]he policy objective behind *Younger* abstention is to 'avoid unnecessary conflict between state and federal governments.'"); *Roden*, 495 F.3d at 1149 ("[T]he Court 'abstains only if there is a *Younger*-based reason to abstain.'").

The federal action was no longer in its embryonic stage by July 2021, because like *Hoye*, the parties had made extensive progress in the federal proceeding. 653 F.3d at 844. Indeed, from June 2020 to July 2021, significant developments took

place in the federal action: the parties conducted extensive discovery (12 ER 2880-2916, 2876-79); the parties briefed and argued a temporary restraining order (10 ER 2174; 13 ER 3155-63) and multiple motions to dismiss the complaint (14 ER 3317-47; 13 ER 2956-87); the parties participated in a case management conference in January 2021 and submitted a joint case management statement with a proposed case schedule, including a trial date (1 ER 30; 12 ER 2953-54); and Appellants amended their federal complaint multiple times (14 ER 3164-3310; 12 ER 2918-51). Additionally, from December 2020 through April 2021, the Supreme Court issued numerous decisions enjoining the State of California and the County's COVID-19 orders, further vindicating Appellants' position. *See, e.g.*, *Gateway*, 141 S. Ct. 1460; *South Bay*, 141 S. Ct. 716. The federal court was no longer in its embryonic stage because it was intimately familiar with Appellants' claims and had issued substantive rulings in the federal action. 10 ER 2179.

Even if this Court considers October 2020 as the appropriate date for *Younger* purposes, this Court has also held that even if a case is still in its "embryonic stage," it will still consider the amount of time the federal case has been pending. *Nationwide Biweekly Admin.,* 873 F.3d at 730 (quoting *Forty One News, Inc. v. Cty. Of Lake*, 491 F.3d 662, 666 (7th Cir. 2007)). Further, even if the federal court has not issued a substantive ruling, but the court or parties have taken substantial steps in anticipation of that ruling, the court may find the subsequently filed state proceeding not "ongoing." *Costello v. Wainwright*, 525 F.2d 1239, 1246 (5th Cir. 1976), vacated in part on other grounds, 539 F.2d 547 (5th Cir. 1976) (en banc)

(denial of abstention affirmed where federal court had appointed a special master and special master had prepared a report before the state action was filed).

The federal action had been pending for nearly four months by the time the County filed the stated action. In *Hoye*, this Court found that abstention was inappropriate in part because six months elapsed between the filing of the federal case and the filing of the state case. 653 F.3d at 844. Here, between June 2020, when the federal action was filed, and October 2020, when the state action was initially filed, the parties had briefed a substantive motion to dismiss. Thus, while the Court should determine whether the "ongoing" element was satisfied based upon July 2021, even if the Court considers October 2020, the facts of this case support a finding that the state proceeding was not ongoing. The County's delay in bringing a *Younger* motion militates against abstention.

(ii)    Important State Interest

The second element of *Younger* abstention requires that the state proceeding implicate important state interests. *Gilbertson*, 381 F.3d at 978. The key to determining whether comity concerns are implicated in an ongoing state proceeding – and thus whether the second *Younger* requirement is met – is to "ask whether federal court adjudication would interfere with the state's ability to carry out its basic executive, judicial, or legislative functions." *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 883 (9th Cir. 2011). Unless interests "vital to the operation of state government" are at stake, federal district courts must fulfill their "unflagging obligation" to exercise the jurisdiction given them. *Miofsky v.*

31

*Superior Court of the State of Cal.*, 703 F.2d 332, 337-38 (9th Cir. 1983); *accord Polykoff, IAS, Inc. v. Collins*, 816 F.2d 1326, 1332 (9th Cir. 1987).

The Supreme Court and this Court have refrained from abstaining in cases involving facial challenges based on the First Amendment. *See, e.g.*, *Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965) ([A]bstention…is inappropriate for cases [where]…statutes are justifiably attached on their face as abridging free expression."); *Playtime Theaters, Inv. v. City of Renton*, 748 F.2d 527, 532 (9th Cir. 1984) ("*Pullman* abstention would almost never be appropriate in first amendment cases because such cases involve strong federal interests and because abstention could result in the suppression of free speech"). This Court has also refused to extend *Younger* to civil cases generally. *See, e.g., Champion International Corp. v. Brown*, 731 F.2d 1406 (9th Cir. 1984); *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 469 (9th Cir. 1984); *Potrero Hills Landfill*, 657 F.3d at 882.

The district court held the County's enforcement action implicated an important state interest because it sought to enforce health and safety provisions and to abate public nuisances. 1 ER 38-41. In doing, the district court improperly relied on *Herrera*. *Id*. However, in that case, the public health orders at issue pertained to the health and habitability of a decaying motel under the California Building Standard Codes and the California Health and Safety Code. *Herrera*, 918 F.3d at 1041. The Herreras filed a federal lawsuit alleging numerous constitutional violations, based upon the defendants' conduct, such as their unlawful investigations. *Id.* at 1041, 1048-49. The federal constitutionality of the underlying

codes was not at issue. *Id.* This Court held the state nuisance action satisfied a state interest because the nuisance posed an *ongoing* threat to the public and the state had an interest in eliminating public nuisances and protecting the public from dangerous conditions. *Id.* at 1045.

Contrary to the district court's truncated holding, the County's enforcement action does not seek to "abate public nuisances...." 1 ER 39. Even though the County included a public nuisance cause of action in its initial complaint, it only sought to collect administrative fines in its motion for summary adjudication. 16 ER 3535-67. The County could not address its public nuisance claim in its recent motion because the conditions that prompted the supposed public nuisance no longer existed. 1 ER 13. COVID-19 no longer poses a significant risk of transmission. 1 ER 11-14, 16-18. In fact, the district court recognized that portions of Appellants' claims were moot because several of the relevant health orders were lifted in April 2021 – months before the County sought to amend their complaint to seek a collection of fines. 1 ER 13.

Moreover, Appellants have alleged numerous facial challenges to the COVID-19 public health orders under the First Amendment – and this Court has recognized that "abstention would almost never be appropriate in first amendment cases...." *Playtime Theaters, Inv.*, 748 F.2d at 532; 10 ER 2198-2200. Specifically, Appellants alleged the face-mask mandate, capacity restrictions, and singing ban violated the Free Exercise Clause. 10 ER 2198-99. The Supreme Court has vindicated Appellants' position numerous times. *See, e.g., South Bay*, 141 S. Ct. 716;

*Gateway*, 141 S. Ct. 1460; *Tandon v. Newsom*, 141 S. Ct. 1294 (2021). The County does not have an interest in collecting fines predicated upon unconstitutional orders. Indeed, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Thus, the second *Younger* factor is not satisfied, and the district court abdicated its "unflagging obligation" to exercise its jurisdiction. *Miofsky*, 703 F.2d at 338.

(iii)   Opportunity To Raise Federal Claims

Appellants did not have an opportunity to raise their federal claims in the state court. In the line of *Younger* cases, the defendants raise abstention early in the case, often times on the first motion to dismiss. *See, e.g.*, *Herrera*, 918 F.3d at 1042. Thus, the plaintiffs had an opportunity to defend their position in state court by bringing a cross-complaint. *Id.* at 1046.

Here, the federal case reached the end of discovery, and the parties filed motions for summary judgment in both the state and federal court. 5 ER 997-1010; 16 ER 3535-67.  On April 7, 2023, the state court granted the County's motion for summary adjudication. 16 ER 3535-67. Appellants did not have an adequate opportunity to file a cross-complaint in state court and reach a decision on the merits before the state court ruled on the County's motion.

*Herrera* does not support a different conclusion. There, this Court found the Herreras had an adequate opportunity to raise their constitutional claims. 918 F.3d at 1047. However, the city filed its state court complaint almost "simultaneously"

34

with the Herreras federal lawsuit. *Id.* at 1041. At the outset of the federal lawsuit, the city filed a motion for abstention, providing the Herreras with adequate time to file their constitutional claims in state court before a hearing on the merits. *Id.* The third factor is not satisfied here because the County did not provide Appellants with timely notice.

(iv) Enjoining Of State Action

Appellants' federal case does not enjoin the parallel state proceeding. The fourth element of *Younger* abstention requires that the federal action enjoin, or have the practical effect of enjoining, the ongoing state court proceeding. *Gilbertson*, 381 F.3d at 978. *Younger* abstention does not apply simply because a pending state court proceeding involves the same subject matter as the federal suit. *Montclair Parkowners Ass'n v. City of Montclair*, 264 F.3d 829, 831 (9th Cir. 2001). Under this element, "the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction, much less abdicating it entirely." *Roden*, 495 F.3d at 1151-52 (citing *Colo. River Water Conservation Dist.*, 424 U.S. at 816. Although a federal court ruling might influence a state court or vice versa through claim or issue preclusion, this is insufficient to trigger *Younger* abstention. *Montclair Parkowners Ass'n*, 264 F.3d at 831. If a judgment is entered in one court, the parallel court is to determine the effect of the first judgment based on principles of claim or issue preclusion by the court in which the action is still pending through "orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of a case."

*Roden*, 495 F.3d at 1151-52 (citing *Kline v. Burke Const. Co.*, 260 U.S. 226, 230 (1922)).

Here, Appellants do not ask the district court to enjoin the state proceedings. Should this Court remand and the district court enter a judgment as to the constitutionality of the fines, the County would be free to continue to "proceed in its own way and in its own time…." *Roden*, 495 F.3d at 1151. In the state action, the County's primary focus was enforcement of the public health orders. 16 ER 3568-3606. The focus was not to challenge the constitutionality of the public health orders as is the case in Appellants' federal complaint. 16 ER 3568-3606; 10 ER 2181-2205. Appellants request for nominal damages has no effect of enjoining the state action for purposes of *Younger* abstention. *Roden*, 495 F.3d at 1151-52. Thus, "concurrent consideration, not abstention, is the solution." *Id.* The County fails to satisfy the *Younger* abstention factors.

### 4. Even If The Court Finds That The *Younger* Factors Are Satisfied, This Case Implicates A *Younger* Exception.

Even if the Court finds that *Younger* abstention is appropriate in this case, the court may nevertheless exercise jurisdiction where there is a showing of bad faith or harassment, extraordinary circumstances, or great and immediate irreparable injury. *See Younger*, 401 U.S. at 47-49; *Dayton*, 477 U.S. at 626 (discussing exception to *Younger* where threat of "great and immediate irreparable injury" exists).

Here, the County has acted in bad faith. In asserting *Younger* so late in the federal proceeding, the County attempted to forum shop and avoid an adverse decision by the federal court. In doing so, the County sought to deprive Appellants

of their opportunity to vindicate their federal rights in federal court. *See Zwickler v. Koota*, 389 U.S. 241 (1967) ("Duty of federal judiciary to give due respect to [Plaintiffs'] choice of federal forum for hearing and decision of federal constitutional claims may not be escaped merely because state courts also have solemn responsibility, equally with federal courts, to guard, enforce, and protect every right granted or secured by the federal Constitution."); *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411 (1964) ("State courts should respect a litigant's reservation…of his federal claims for decision by federal courts…").

Additionally, in the typical *Younger* abstention case, the state court proceeding is filed before or around the same time as the federal action. *Hicks*, 422 U.S. at 349 (state proceedings commenced one day after service of the federal complaint); *Doran*, 422 U.S. at 925 (state prosecution commenced one day after the filing of the federal complaint); *Herrera*, 918 F.3d at 1043-50 (Defendants filed their state claim "almost simultaneously" after Plaintiffs filed their federal claim). This case poses the exact opposite factual scenario. Appellants pursued a federal action seeking to prevent "great and immediate irreparable injury" to their federal right to free exercise of their religion. *Dayton,* 477 U.S. at 626. Four months later, the County filed its state action that was limited to injunctive relief to enforce its health orders. 16 ER 3607-27. The County could have sought declaratory relief that its health orders were not in violation of the federal constitution, but it did not do so. After the close of factual discovery, the County now claims that *Younger* abstention

is necessary as a last attempt to avoid an adverse judgment by the district court. This is a clear abuse of the abstention doctrine.

Accordingly, the Court should find that even if the *Younger* factors are satisfied, the County has acted in bad faith, and Appellants will suffer irreparable injury if the court does exercise its jurisdiction.

**B.  THE FEDERAL DISTRICT COURT ERRED IN DISMISSING APPELLANTS' FIRST AMENDMENT RETALIATION CLAIM BECAUSE COUNTY COUNSEL JAMES WILLIAMS IS NOT PROTECTED BY THE *NOERR-PENNINGTON* DOCTRINE.**

Appellants' First Amendment retaliation claim is not barred by the *Noerr-Pennignton* doctrine because the County was not petitioning a government body, but rather a private party when it issued threatening letters to Appellants' financial institution.

**1.  As A Preliminary Matter, This Court Has Jurisdiction Over The Appeal Regarding Appellants' First Amendment Retaliation Claim Because The Lower Court Issued A Final Order In The Instant Action.**

Appellants' appeal of the lower court's dismissal of its First Amendment retaliation claim is appropriate because the lower federal court has since issued a final, appealable judgement in the instant action effectively putting Appellants out of court. *Herrera*, 918 F.3d at 1042. "Under the final judgment rule embodied in 28 U.S.C. § 1291, the courts of appeal have jurisdiction over 'appeals from all final decisions of the district courts of the United States.'" *Couch v. Telescope Inc.,* 611 F.3d 629, 632 (9th Cir. 2010). "A district court order is . . . not appealable unless it disposes of all claims as to all parties or unless judgment is entered in compliance

with Federal Rule of Civil Procedure 54(b)." *Romoland Sch. Dist. v. Inland Empire Energy Ctr.,* 548 F.3d 738, 747 (9th Cir. 2008).

On March 10, 2023, the lower court dismissed all of Cavalry's claims without prejudice and only issued a stay as to Appellants' monetary relief. 1 ER 52. The lower court's decision to stay proceedings has no effect upon the final outcome of this instant action. Indeed, in *Herrera*, the lower court also dismissed the claims for prospective relief and stayed the damages claims. 918 F.3d at 1042. This Court concluded that it had jurisdiction because "the resolution *required* by our court when granting *Younger* abstention on damages claims – is effectively a final order for purposes of appellate review." *Herrera*, 918 F.3d at 1043 (emphasis in original). Because the lower court dismissed all of Appellants' claims, the appeal "draws in question all earlier, non-final orders and rulings which produced the judgment," including the appeal of the partial order dismissing the First Amendment retaliation claim. *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984). As such, this Court has jurisdiction over Appellants' appeal of the dismissal of its First Amendment retaliation claim.

### 2. The *Noerr-Pennington* Doctrine Is Only Applicable In Instances When The Petitioning Party Is Petitioning A Government Body.

"To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—*i.e.*, there was a nexus between the defendant's actions and an

intent to chill speech." *Ariz. Students' Ass'n*, 824 F.3d at 867 (cleaned up). This is not a high standard and to prevail, "a plaintiff need only show that the defendant intended to interfere with the plaintiff's First Amendment rights and that it suffered some injury as a result; the plaintiff is not required to demonstrate that its speech was actually suppressed or inhibited." *Id.* (quotations omitted).

In their third amended complaint, Appellants alleged that "[a]s of December 2020, [Appellants] were involved in several legal actions against the County, including this case." 11 ER 2641-42. The complaint alleged that, while those actions were pending, "County officials, instructed by Mr. Williams, sent threatening letters to Cass Bank," which held a mortgage on the church's property. 12 ER 2724. The complaint also alleged that Mr. Williams and his colleagues did this "to pressure Cass Bank to declare a default that would cost CCSJ hundreds of thousands of dollars … to punish CCSJ and Pastor McClure for defying the COVID-19 orders and to pressure them to drop their legal actions." 11 ER 2642. These allegations are more than enough to state a claim for First Amendment retaliation.

The lower court incorrectly held that Appellants' First Amendment retaliation claim was barred by the *Noerr-Pennnington* doctrine. 1 ER 21-23. The *Noerr–Pennington* doctrine derives from the First Amendment and thus provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929. County Counsel James Williams was not petitioning the government for

redress when he sent the threatening letters to Appellants' bank. He works for the government. He sent the letters on behalf of the government.

True, the Ninth Circuit has found that "a governmental entity or official may receive Noerr-Pennington immunity for the petitioning involved in an eminent domain proceeding." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645 (9th Cir. 2009). Thus, immunity may apply if Appellants alleged Mr. Williams retaliated against them by filing a lawsuit. However, courts have made clear that government actors are only protected by *Noerr-Pennington* if they engage in activity that is "sufficiently related to petitioning activity." *Sosa*, 437 F.3d at 935.

The lower court attempted to distinguish this limiting principle by saying that the church's bank was not exercising petitioning rights. 1 ER 22. That does not matter. Appellants were in the middle of a lawsuit (this case) that challenged the fines the County had issued against them. James Williams sent threatening letters to the bank to induce it to foreclose on the Appellants' loans and to pressure them into dropping their legal challenges. 11 ER 2462-63. That is a quintessential First Amendment retaliation claim. Mr. Williams may dispute his motivation in sending the letters, but that would raise a factual issue that is not amenable to resolution at the pleading stage.

Furthermore, it was improper for the lower court to mischaracterize the letters sent by James Williams. 1 ER 22-23. Appellants do not allege the letters were sent to inform the bank of Appellants' outstanding fines. Appellants allege that James Williams sent the letters to pressure Appellants into dropping their litigation. This

Court must accept these facts as true at this stage. The lower court's finding also conflicts with the record, which reveals the letters were sent in December 2020 and January 2021, months before the County sought to collect fines from Appellants through its enforcement action. 10 ER 2360-70.; 1 ER 21-23. Thus, this Court cannot conclude that the fines were related to the County's enforcement action.

### 3. The District Court Improperly Dismissed The Case Without Leave To Amend.

Although the lower court's decision is erroneous, the court also failed to provide leave to amend, which is another reason this Court must reverse the decision. "Denial of leave to amend is reviewed for an abuse of discretion." *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). A "district court does not err in denying leave to amend where the amendment would be futile." *Id.* (internal quotation marks omitted). An amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Although the Appellants have alleged enough facts to bring a First Amendment retaliation claim, the district court, instead, sought to interpret its own understanding of the purpose and context of the County's letters to Calvary's financial institution. The lower court noted that leave to amend would be "futile" (1 ER 23), yet, by its own analysis, it is apparent that additional factual discovery and

42

clarification would have helped the lower court to further understand the scope and context of the letters and their impact on Appellants' First Amendment retaliation claim. Thus, on this basis alone, the Court should reverse the district court's dismissal.

## VIII. CONCLUSION

This Court should reverse or vacate the district court's dismissal and remand for further proceedings.

Dated:  June 30, 2023.

/s/ Mariah Gondeiro
Mariah Gondeiro

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and 9th Cir. Rule 27-1(d). This document is proportionally spaced and, not counting the items excluded from the length by Fed. R. App. P. 32(f), contains 9,042 words.

This document complies with the type-case requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.

/s/ Mariah Gondeiro
Mariah Gondeiro